**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

ERNESTOR S. MARTINEZ           )
                               )
              Petitioner,      )     **CIVIL ACTION**
                               )
v.                             )     No. 05-3415-MLB
                               )
STATE OF KANSAS, et al.,       )
                               )
              Respondents.     )
                               )

**MEMORANDUM AND ORDER**

This matter comes before the court on petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The petition has been fully briefed and is ripe for decision. (Docs. 13, 31.) The petition is DENIED for reasons set forth herein.

**I.  FACTS AND PROCEDURAL HISTORY**

Petitioner was convicted of rape following a jury trial in state court and sentenced to 308 months in prison. In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Accordingly, the court incorporates the Kansas Court of Appeals' version of the facts:[1]

> C.R., the complaining witness, testified she was 17 years old when the incident occurred. C.R. first encountered Martinez while he was painting at C.R.'s apartment complex. Following C.R.'s initial contact with Martinez, C.R. had various encounters with Martinez, and at one point, she gave him her phone number. C.R.'s roommate, Jolaen Dill, also had some

---

[1] To the extent petitioner challenges the state court's factual findings, either on direct appeal or in his state habeas proceedings, the court will evaluate those assertions later in this order.

>                   conversations with Martinez during this time.
>                       On the day of the incident, C.R. testified
>                   Martinez showed up at her apartment in the
>                   morning. Martinez asked to see Dill. C.R. told
>                   Martinez that Dill was in her bedroom sleeping.
>                   After checking to see if Dill was available and
>                   seeing that she was sleeping, Martinez sat down
>                   on a couch in the living room next to C.R.
>                   Martinez began touching and kissing C.R. and
>                   eventually penetrated her vagina with his penis.
>                   C.R. repeatedly told Martinez she did not consent
>                   to the contact.
>                       The State presented physical evidence
>                   through Jodee Pike, a sexual assault nurse
>                   examiner. Pike had examined C.R. following the
>                   incident. While Pike found no external injuries,
>                   she noted various internal injuries which were
>                   consistent with C.R.'s explanation of intercourse
>                   by force. Pike's testimony also included picture
>                   exhibits admitted into evidence demonstrating the
>                   injuries to the jury.
>                       Martinez testified in his own defense.
>                   According to Martinez, the intercourse was
>                   consensual. Martinez also told the jury he had
>                   had intercourse with Dill minutes after his
>                   encounter with C.R.
>                       The jury found Martinez had committed rape
>                   by overcoming C.R. through force or fear.

State v. Martinez, No. 85,528 at 2-4 (Kan. Ct. App. Nov. 9, 2001) (per curiam) (Martinez I).

The conviction was affirmed by the Kansas Court of Appeals, and the Kansas Supreme Court denied review. Martinez I. Petitioner then commenced state habeas proceedings under K.S.A. 60-1507. His case was heard by the same judge who presided over his criminal trial. Martinez v. State, No. 91,528 at 6 (Kan. Ct. App. Feb. 11, 2005) (per curiam) (Martinez II.) Petitioner was represented by counsel, and was afforded an evidentiary hearing. Id. at 1, 3. The state habeas court denied relief in a written order. (Doc. 1 exh. 1, Order Denying Relief Pursuant to K.S.A. 60-1507 Motion). The state court of appeals affirmed, and the supreme court denied review. Martinez II; (Doc. 13

at 3.)

Having failed at every turn, petitioner now turns to the federal courts seeking review of his conviction. Nonetheless, this court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in AEDPA, if petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

> A state court decision is "contrary to" Supreme Court precedent in two circumstances: (1) when "the state court applies a rule that contradicts the governing law set forth in [the Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that reached by the Court. Williams v. Taylor, 529 U.S. 362, 406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. 1495. Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

> incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411, 120 S. Ct. 1495; <u>see also</u> <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing <u>Williams</u>).
> Finally, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Smith v. Mullin</u>, 379 F.3d 919, 924-25 (10th Cir. 2004).

<u>Hamilton v. Mullin</u>, 436 F.3d 1181, 1186 (10th Cir. 2006). An inherent limitation to review under § 2254 is that a habeas court will only consider alleged violations of <u>federal</u> law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991). Moreover, the court will not normally consider federal questions unless they have first been presented to the state courts. <u>Picard v. Connor</u>, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); <u>but see</u> 28 U.S.C. § 2254(b)(2) (permitting <u>denial</u> on the merits, despite failure to exhaust state remedies).

## II. ANALYSIS

Petitioner presents three claims of constitutional error in his state trial, all premised on ineffective assistance of trial counsel. A claim for ineffective assistance of counsel in violation of the Sixth Amendment requires petitioner to show that 1) his counsel's performance fell below an objective standard of reasonableness; and 2) but for his counsel's unreasonable errors, there is a reasonable probability that the outcome of the proceeding would have been different. <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 1511-12, 146 L. Ed. 2d 389 (2000); <u>Strickland</u>, 466 U.S. at 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In evaluating the performance of trial counsel, the Supreme Court provided the following

-4-

guidance:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, <u>a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance</u>; that is, <u>the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."</u> <u>See</u> <u>Michel v. Louisiana</u>, supra, 350 U.S., at 101, 76 S. Ct., at 164.
>
> . . .
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

<u>Strickland</u>, 466 U.S. at 689-90, 104 S. Ct. at 2065-66 (emphasis added). Thus, under this standard, counsel's performance is presumed competent, and petitioner bears the burden of rebutting that presumption.

In reviewing petitioner's claims, the Kansas Court of Appeals did not cite <u>Strickland</u>; instead, the state court relied on state

decisions, but the standards set forth in those decisions are the <u>Strickland</u> standards.  <u>Martinez II</u> at 3.

    A.  Failure to Meet with Petitioner

    For his first theory as to why trial counsel was ineffective, petitioner asserts that "[t]rial counsel failed to meet with petitioner which left him without benefit of counsel during a critical stage of the proceedings."  (Doc. 1 at 6.)  Petitioner further elaborates on this theory by alleging that trial counsel failed to meet with him to prepare him to testify.  <u>Id.</u>

    Petitioner fails to explain whether he thinks the state appellate court erred in its factual determinations or in its legal analysis of this claim.  With respect to the facts, the state habeas court conducted an evidentiary hearing from which it concluded that petitioner's present claim that counsel failed to meet with him is a lie.  Instead, based on both written records and testimony from petitioner's trial counsel, the state court found that trial counsel had met with petitioner at least four times prior to trial, with three of those meetings occurring within a week of trial.  (Doc. 1 exh. 1, Order Denying 60-1507 Motion at 4; R. Vols. 7-9 (showing jury trial conducted Jan. 24-26, 2000).)  Moreover, the state court found that in at least one of these meetings, trial counsel specifically prepared petitioner to testify.  (Doc. 1 exh. 1, Order Denying 60-1507 Motion at 4.)  Finally, the state court also determined that these face-to-face meetings had been augmented by numerous letters and similar correspondence from trial counsel to petitioner, much of which dealt with preparing petitioner for trial.  <u>Martinez II</u> at 4.  On appeal, the Kansas Court of Appeals affirmed the factual accuracy of these

-6-

findings. Id.

Against this bulwark of evidence and factual findings derived from an evidentiary hearing, petitioner fails to point to one shred of evidence supporting his conclusory allegation that trial counsel failed to meet with him or prepare him to testify. Petitioner has failed to meet his burden to prove by clear and convincing evidence that the state court's factual determinations on this point were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(2), (e)(1).

Turning now to the Court of Appeals' legal conclusions, the question is whether it was an unreasonable application of Supreme Court precedent to conclude that the four face-to-face meetings and the supporting correspondence amounted to ineffective assistance of counsel. Id. § 2254(d)(1); Hamilton, 436 F.3d at 1186. Petitioner fails to point to any Supreme Court case law in support of his position.[2] Although pro se litigants are entitled to liberal construction of their pleadings, including in habeas cases, Binford v. United States, 436 F.3d 1252, 1253 & n.1 (10th Cir. 2006), petitioner is represented by counsel, as he was throughout his state criminal and habeas proceedings. The court is aware of no Supreme Court case that would compel a finding of ineffective assistance of

---

[2] Likewise, a review of his brief to the state appellate court on his K.S.A. 60-1507 motion shows that he cited no case law, state or federal, that purported to show that four face-to-face meetings and numerous letters from counsel to a criminal defendant amounted to ineffective assistance of counsel. While the mere fact of meetings does not foreclose the possibility of an ineffective assistance claim, the state courts concluded that these meetings were not superficial, but were genuine efforts to counsel with petitioner and prepare him for trial. See Martinez II at 4-5.

counsel on these facts, and petitioner's failure to cite to such a case lends further support to the conclusion that none exists. Indeed, the federal courts of appeal have repeatedly noted the lack of a requirement that defense counsel meet a defendant a minimum number of times before trial. See, e.g., Moody v. Polk, 408 F.3d 141, 148 (4th Cir. 2005); United States v. Olson, 846 F.2d 1103, 1108 (7th Cir. 1988); Schwander v. Blackburn, 750 F.2d 494, 499-500 (5th Cir. 1985).

By contrast, respondents point to a Tenth Circuit case holding that counsel was effective even though he never met with the defendant, but instead had his assistant meet with the defendant three times prior to trial. (Doc. 13 at 9 (citing United States v. Chavez-Marquez, 66 F.3d 259, 262 (10th Cir. 1995).) The real issue is whether trial counsel effectively prepared petitioner for trial. See Chavez-Marquez, 66 F.3d at 262 (noting that the case was not particularly complicated). Petitioner fails to point to any part of his trial testimony that he believes was deficient, and that would have been remedied had trial counsel devoted more efforts to preparing him. Nor does he suggest that counsel lacked any specific information about the case as a result of having met with him so few times, or how the lack of any such information affected counsel's performance at trial. (See generally Doc. 1); see also Martinez II, Br. of Appellant at 4-5. Instead, his allegations are conclusory - that trial counsel did not meet with him enough, and that some sort of prejudice should be presumed. That is not the law. On this record, there is no basis to conclude that trial counsel was ineffective for failing to meet with petitioner and prepare him for trial. The Kansas Court of

Appeals' decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.

B.  Failure to Request an Independent Mental Evaluation

Next, petitioner argues that trial counsel was constitutionally deficient for failing to request that the alleged victim undergo an independent mental examination.  (Doc. 1 at 6.)  While petitioner raised this claim in his K.S.A. 60-1507 motion (Doc. 1 exh. 1, Order Denying 60-1507 Motion at 3-4), he abandoned the theory on appeal. See generally Martinez II, Br. of Appellant (revealing that petitioner failed to mention anything about an independent mental evaluation in his brief to the state appellate court, with the mere exception that he noted that this issue was raised in his original 60-1507 motion to the state district court).  Nevertheless, the Kansas Court of Appeals addressed the merits of the claim in its decision.  Martinez II at 6. The court can only presume that the court of appeals addressed the matter because is was discussed in the habeas court's order denying the 60-1507 motion.  (Doc. 1 exh. 1, Order Denying 60-1507 Motion at 3-4.)  Rather than wrangle with the question of whether the issue has been properly exhausted in the state system, the court will proceed to the merits of the matter.  28 U.S.C. §§ 2254(b)(1)(A), (b)(2).

The simple fact is that the state habeas court found that trial counsel did request an independent mental evaluation of the victim, and that the request was granted.  (Doc. 1 exh. 1, Order Denying 60-1507 Motion at 3.)  Petitioner fails to explain how that factual determination was erroneous.  (See generally Doc. 1); see also Martinez II, Br. of Appellant.  Accordingly, the factual basis for this claim collapses, and his petition on this point is denied.

C.  Failure to Argue Confrontation Clause Issues

Petitioner's last argument is that his trial counsel was ineffective for failing to argue that a trial court evidentiary ruling violated petitioner's rights under the Confrontation Clause of the Sixth Amendment. Evaluation of this argument requires some additional factual discussion.

1.  Facts and Procedural History

The State charged petitioner under alternative rape theories. One theory was that of rape while the victim was overcome by force or fear.  In the alternative, the State charged that the victim was incapable of giving consent.  Martinez I at 2.  In a nutshell, the State claimed that the victim did not consent; but if she did, she was not legally capable of consenting.  The alternative charge was based on the allegation that the victim was mentally handicapped.  Id.

At trial, the State's expert witness, Dr. Morrison, testified on direct examination that, although the victim was seventeen years of age, mentally she operated on the level of a twelve- or thirteen-year-old.  (R. VII at 106.)  Morrison went on to opine that the victim had an abnormally high desire for acceptance and to please others.  Id. at 107.

On cross examination, defense counsel led Morrison to reaffirm her conclusions that the victim had a high need for approval and acceptance. Defense counsel further elicited testimony from Morrison that this need for approval might lead the victim to remain silent when she would otherwise want to speak out. Ultimately, when defense counsel attempted to make the final leap with the question of whether or not this might lead the victim to consent to sex in order to obtain

-10-

approval, the prosecutor objected and the trial court sustained the objection on the basis of a state rule of evidence, K.S.A. 60-456. (R. VIII at 115-17); Martinez I at 5. Petitioner maintains that it was at this crucial moment that his trial counsel was obligated to argue to the trial court that the Confrontation Clause trumped the state rule of evidence, and that the Constitution required that the expert be made to answer the question.

Unfortunately, this issue finds its way before the court in a bit of a procedural morass. In his direct appeal, petitioner presented the Confrontation Clause issue to the Kansas Court of Appeals. Martinez I at 4. However, he did not present it in the context of an ineffective assistance of counsel claim. The state court ruled that the Confrontation Clause issue had not been preserved at trial, and was thus not properly raised for the first time on appeal. Martinez I at 5. Nevertheless, the court of appeals purported to reach the merits of the claim. Id.

A review of the appellate court's analysis raises a question of whether it truly considered the merits of the argument. While identifying the Confrontation Clause as the basis for the claim of error, the Kansas Court of Appeals based its analysis exclusively on the state evidentiary rule, and made no further mention of the Confrontation Clause or its supporting case law, state or federal. See id. at 5-6. The mere fact that an evidentiary ruling satisfies a rule of evidence does not answer the question of whether the ruling comports with the Constitution. See, e.g., Crawford v. Washington, 541 U.S. 36, 40, 68-69, 124 S. Ct. 1354, 1358, 1374, 158 L. Ed. 2d 177 (2004) (showing that evidence admissible under state rule of evidence

-11-

violated Confrontation Clause).  The Kansas Court of Appeals ultimately rejected petitioner's Confrontation Clause argument.

After the state supreme court denied review on direct appeal, petitioner commenced his habeas corpus proceedings in the state system.  In his motion under K.S.A. 60-1507, petitioner argued that counsel was ineffective for failing to raise the Confrontation Clause argument at trial.  The state habeas court rejected that argument based on the Kansas Court of Appeals' ruling on direct appeal regarding the substance of the Confrontation Clause issue.  (Doc. 1 exh. 1, Order Denying 60-1507 Motion at 3.)  The habeas court concluded that since the Kansas Court of Appeals had found no Confrontation Clause violation, there was no basis for an ineffective assistance claim premised on that error.  Id.

The procedural problems were compounded on appeal of the habeas decision when petitioner failed to raise the issue of ineffective assistance with respect to the Confrontation Clause.  A review of his brief on appeal shows that the only mention of the Confrontation Clause was in his factual summary, where he noted that he had presented that argument in his 60-1507 motion.  By contrast, no fair reading of the balance of his brief would support the conclusion that he presented the issue to the court of appeals.  Martinez II, Br. of Appellant at 2, 4-8.  Likewise, a review of the State's brief in response shows that it did not address the Confrontation Clause.  Id., Br. of Appellee.  Finally, the Kansas Court of Appeals did not address the issue.  See generally Martinez II (showing that the court of appeals noted the presentation of the Confrontation Clause issue to the habeas court, but the court of appeals did not discuss the matter

-12-

in its analysis of the case). Accordingly, it is clear that petitioner failed to exhaust this claim in the state system.

Failing to exhaust his remedies would ordinarily bar petitioner from raising these issues in his federal habeas case. 28 U.S.C. § 2254(b)(1)(A). For some mysterious reason, respondents failed to raise the exhaustion issue. (See generally Doc. 13.) Nevertheless, exhaustion of remedies cannot be waived absent an express indication to that effect by the State. 28 U.S.C. § 2254(b)(3).

Rather than analyze the issues of exhaustion, procedural default, cause and prejudice, etc., the court will exercise its authority to deny an unexhausted claim on the merits. Id. § 2254(b)(2). Furthermore, given that the court has some reservations about whether the Kansas Court of Appeals truly reached the merits of the Confrontation Clause issue on direct appeal, the court will decide the matter de novo.[3]

2. Merits of the Ineffective Assistance Claim

The first question presented is whether trial counsel's

---

[3] There is an abundance of case law holding that the state court needs to do very little in order to support a finding that it reached the merits of a habeas claim. See, e.g., Early v. Packer, 537 U.S. 3, 10, 123 S. Ct. 362, 366, 154 L. Ed. 2d 263 (2002); Goss v. Nelson, 439 F.3d 621, 636 (10th Cir. 2006); Gipson v. Jordan, 376 F.3d 1193, 1196 n.1 (10th Cir. 2004); Cook v. McKune, 323 F.3d 825, 831 (10th Cir. 2003). However, in most cases, the state court either addressed the issue in summary fashion or decided it based on state cases, without citing any federal law. Under those circumstances AEDPA deference was held appropriate. By contrast, in this case, the Kansas Court of Appeals' analysis gives every indication that it considered the Confrontation Clause question to be foreclosed by the fact that the testimony was barred by a state rule of evidence. Martinez I at 5-6. Under these circumstances, the court will decide the question de novo, inasmuch as denial of relief under that demanding standard necessarily implies denial under the more lenient AEDPA standard.

-13-

performance fell below an objective standard of reasonableness when he failed to argue the Confrontation Clause as a basis for his question to the State's expert.  See Strickland, 466 U.S. at 689-90, 104 S. Ct. at 2065-66.  The court concludes that it did not.

The significance of the disputed question is that it may have helped establish a greater probability that the victim consented to engage in sex.  If the jury had found consent, then it would have had to consider whether the victim was legally capable of giving consent.  Since the jury convicted petitioner of forcible rape, it is obvious that the jury concluded there was no consent.  Thus, the issue of consent was central to the verdict, and trial counsel's question was relevant.

Nevertheless, the jury received virtually the full import of the question and the answer during Morrison's testimony.  On direct examination she clearly testified that the victim had a strong desire for approval and might hide her true feelings in order to obtain that approval.  (R. VIII at 107.)  Defense counsel drove that point home on cross examination, having Morrison repeat her conclusions that the victim had a strong desire for acceptance and approval, and that she might remain silent about her true feelings in order to secure that approval.  Id. at 115.  By the time the prosecution objected and the trial court sustained the objection, petitioner's counsel was fully armed with the testimony he needed to argue to the jury that the victim might well have consented in order to obtain approval or acceptance from petitioner.  In fact, that is exactly what trial counsel did.  He specifically argued to the jury that, based on Morrison's testimony regarding the victim's need for acceptance and

-14-

approval, that consent was not only possible, but more probable. (R. IX at 67-68.)

Thus, it was not objectively unreasonable for petitioner's counsel to believe that he had elicited all the admissions that he needed from Morrison, and that there was little to be gained from battling over a Confrontation Clause issue. Moreover, the court finds that the Confrontation Clause was satisfied in this case because petitioner was able to obtain substantially all the benefit he might possibly have realized from this line of questioning. Morrison certainly could not have testified that the victim actually consented to have sex with petitioner. The most petitioner could have hoped for was an admission that the victim's mental condition made consent more probable, and he implicitly got that.

For the same reason, the court finds no prejudice to petitioner. He got virtually everything he wanted out of Morrison. Even if petitioner was entitled to have his question answered, the answer would have added little to what Morrison had already conceded. The jury new that the victim was mentally handicapped and was inclined to give in to others in order to obtain approval and acceptance. Juxtaposed to that evidence was the victim's unequivocal testimony that she did not consent, that she resisted petitioner's advances, and that she told him "No" numerous times during the assault. (R. VIII at 34-38.) The jury had all it needed to know to decide whether the victim consented. Any additional testimony from Morrison would have been cumulative.

In sum, trial counsel's failure to raise the Confrontation Clause issue to the trial court did not fall below an objective standard of

reasonableness, and had no effect on the outcome of the trial. The petition is therefore DENIED on all issues.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __7th__ day of December 2006, at Wichita, Kansas.

                                        s/ Monti Belot  
                                        Monti L. Belot  
                                        UNITED STATES DISTRICT JUDGE